WALDEN v. FALLIS.

## Opinion delivered May 10, 1926.

1. SALES—CONTRACT—ILLEGALITY.—A contract for the sale of a stock of goods, in which the seller, who was the postmistress, agreed to resign her office and recommend the appointment of the purchaser as her successor, would be void as against public policy.

2. CONTRACTS—CONSTRUCTION—JURY QUESTION.—If a written contract, whether it consists of one or more instruments, unequivocally manifests the intention of the parties, the court should declare its effect; but if it is not clear, from a consideration of the contract as a whole, what the intention of the parties is, whether the ambiguity is patent or latent, the question is one for the jury to determine.

3. CONTRACTS—CONSTRUCTION.—In arriving at the intention of the parties where the language of a contract is susceptible of more than one construction, it should be construed in the light of the circumstances surrounding the parties at the time it is made.

4. EVIDENCE—EXPLANATION OF WRITTEN CONTRACT.—Where a contract for sale of a stock of merchandise was ambiguous as to whether payment was conditioned on the appointment of the vendee as postmaster, or whether the clause as to such appointment merely fixed a time for payment, parol evidence was properly admitted to explain its terms.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; affirmed.

### STATEMENT OF FACTS.

Marvin Fallis and Esther Fallis sued T. M. Walden, Owen Walden and Curtis Walden, doing business under the firm name of T. M. Walden & Sons, to recover $500, alleged to be the balance due for the purchase price of a stock of merchandise. The following contract was made Exhibit A to the complaint:

"This agreement, entered into between Esther Fallis, Marvin Fallis, hereinafter known as parties of the first part, and T. M. Walden & Sons, known as party of the second part.

"Whereas, party of the first part has this day sold to party of the second part the following property:

"The entire stock of goods now belonging to Walden & Fallis, at Charlotte, the fixtures, notes receivable,

accounts rec., money on hand and in banks to credit of Walden & Fallis, one-ton Ford truck, for which the party of the second part agrees to pay at once a deed to the place now known as Frank Bullington place and ($1,000) one thousand, in cash, to be paid as follows: $500 to be paid when Curtis Walden becomes postmaster of the Charlotte office. Provided the appointment is made within the next eight months from date of this agreement.''

A contract executed on the same day was made Exhibit B to the complaint. It is as follows:

''This agreement entered into this day between Esther Fallis, known hereafter as party of the first part, and Curtis Walden, hereafter known as party of the second part.

''The party of the first part hereby agrees to resign as postmaster at Charlotte, Arkansas, within the next sixty days from this date and to recommend and lend her influence, together with the influence of her husband, Marvin Fallis, for the appointment of the party of the second part to said position as postmaster at Charlotte, Arkansas.

''The party of the second part hereby agrees that, should he be appointed postmaster and later resign the said office, he will recommend and lend his influence toward the appointment of Marvin Fallis or Esther Fallis for the place. (The following inserted with ink and pen): 'provided either should desire appointment, on condition if said Curtis Walden should resign without selling stock of goods.' ''

According to the testimony of Marvin Fallis, his wife was postmistress at Charlotte, Arkansas; and it was agreed between the parties at the time the contract was executed that she was to resign as postmaster, but that she did not do it. The $500 mentioned in the contract was not to be paid as a consideration for the postoffice so as to retain it in the store. The parties thought that they could secure the appointment of Curtis Walden as postmaster inside of eight months; but the

understanding was that the $500 should be paid in any event, and was not conditioned upon the appointment of Curtis Walden to be postmaster. It was contemplated that he should be appointed, and the clause was inserted with that understanding, meaning to be merely a time fixed within which the $500 should be paid; but it was further understood that, if he was not appointed within eight months, the $500 was to be paid at the end of that time. After the expiration of the eight months, demand was made for the payment of the $500, and the defendants refused to pay it.

Owen Walden was a witness for the defendants. According to his testimony, he informed Marvin Fallis that he did not want the business at all unless he could get the postoffice in the purchase price, and that Fallis promised him that the postoffice should go in as a part of the purchase price. It was thought to be illegal to insert this unconditionally in the contract, but it was understood that the defendants were not to pay the $500 unless they got the postoffice. The contract was drawn in such a way that it would not show the sale of the postoffice. Esther Fallis refused to resign, and none of the defendants were ever appointed as postmaster.

The jury returned a verdict in favor of the plaintiffs, and from the judgment rendered the defendants have duly prosecuted an appeal to this court.

*W. M. Thompson* and *S. M. Bone,* for appellant.

*Charles F. Cole* and *J. Paul Ward,* for appellee.

HART, J., (after stating the facts). It is insisted by counsel for the defendants that the judgment should be reversed because the two instruments in writing set out in our statement of facts were executed on the same day and should be considered together in interpreting the meaning of the contract sued on. It is contended that, when so considered, it is manifest that the $500 was not to be paid unless Curtis Walden was appointed postmaster as specified in the contract. In other words, it is contended that the two instruments show on their face that the payment of the $500 was not intended as

an unconditional obligation of the defendants, but that it rested upon the condition that Curtis Walden should be appointed postmaster, and the case of *Belding* v. *Vaughan,* 108 Ark. 69, is cited to sustain their contention.

In the first place, it may be stated that, if this was the effect of the contract, it is illegal as being against public policy.

In *Edwards* v. *Randle,* 63 Ark. 318, it was held that a contract for the sale of the fixtures of a postoffice, in which the seller, who was the postmaster, agreed to resign his office and recommend the appointment of the purchaser as his successor, is void as against public policy. To the same effect see *McGuire* v. *Corwine,* 101 U. S. 108; 6 R. C. L., § 141, pp. 736 and 737; and 13 C. J., § 375 (I), p. 438.

We do not think, however, that the contract is unambiguous and calls for the construction sought to be placed upon it by counsel for the defendants On the other hand, we do not think the intention of the parties appears clearly from the written instruments, but are of the opinion that there is a latent ambiguity in the contract which calls for an explanation by the introduction of parol evidence, and that the court properly submitted the question to the jury.

This court is committed to the rule that if the written contract, whether it consists of one or more instruments, unequivocally manifests the intention of the parties, the court should declare its effect. On the other hand, if it is not clear, from a consideration of the contract as a whole, what the intention of the parties is, whether the ambiguity is patent or latent, the question is one for the jury to determine. *New York Life Insurance Co.* v. *Allen,* 143 Ark. 143; *Battle* v. *Draper,* 149 Ark. 55; and *Wisconsin & Arkansas Lbr. Co.* v. *Fitzhugh,* 151 Ark. 81.

In arriving at the intention of the parties, where the language of a contract is susceptible of more than one construction, it should be construed in the light of

the circumstances surrounding them at the time it is made. *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90; *Fort Smith Light & Traction Co.* v. *Kelley,* 94 Ark. 461; and *Keopple* v. *National Wagonstock Co.,* 104 Ark. 466.

The parties will be presumed to have known, and the testimony shows that they did know, that it was against public policy for them to contract for one of the plaintiffs to resign as postmaster and secure the appointment of one of the defendants as postmaster in her stead. When these and other circumstances attending the transaction are considered, we are of the opinion that its terms were ambiguous, and that the court was warranted in admitting parol evidence to explain its terms and in submitting the question to the jury.

No objection was made to the form or to the substance of the instructions. In submitting the theory of the defendants, the court instructed the jury that, if it believed from the evidence that the $500 mentioned in the contract filed with the plaintiff's complaint was to be paid only on the condition that the postoffice at Charlotte, Arkansas, was to be delivered to the defendants and Curtis Walden was to be appointed as such postmaster, its verdict should be for the defendants.

On the other hand, as submitting the theory of the plaintiffs, the court instructed the jury that, if it should believe from a preponderance of the evidence that the $500 in question was not a consideration for Mrs. Fallis' resigning from the postoffice, but that the time mentioned in the contract that the payment of the $500 should be made was when Walden became postmaster, was merely to fix the time of its payment, then the verdict should be for the plaintiffs.

The jury by its verdict has accepted as true the testimony of the plaintiffs, and, in the light of the attendant circumstances, we think the court properly held that the instruments exhibited with the complaint were ambiguous, and their meaning was properly left to the jury to be determined.

It follows that the judgment will be affirmed.