CITY OF ST. LOUIS EX REL. GRAHAM C. SEARS ET AL. v. SOUTHERN SURETY COMPANY, a Corporation et al., Appellants.—62 S. W. (2d) 432.

Division Two, June 24, 1933.*

*NOTE: Opinion filed at October Term, 1932, April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 24, 1933.

*Anderson, Gilbert & Wolfort* for Southern Surety Company; *Mc-Laran & Garesche* and *E. H. Wayman* for John J. Clark.

*Greensfelder & Grand* and *F. M. Hemker* for respondents.

184

WESTHUES, C.—This is the second appeal in this case. The first appeal was granted to the St. Louis Court of Appeals from a judgment in defendants' favor. The Court of Appeals reversed and remanded the case for a new trial. [See City of St. Louis ex rel. v. Clark, 35 S. W. (2d) 986.] In the meantime the interest that accrued increased plaintiffs' claim and at the second trial plaintiffs received a judgment in the sum of $8,778. Hence the appellate jurisdiction in this court.

The suit was based on the theory that plaintiffs, as subcontractors, furnished certain labor and material for the construction of a public building. Defendant John J. Clark was the original contractor, and defendant Southern Surety Company, surety on Clark's bond. Plaintiffs' suit is on the bond for the balance due by Clark to plaintiffs. Clark entered into a contract with the city of St. Louis, Missouri, for the construction of a men's infirmary building on the grounds of Robert Koch Hospital. This is a public building, therefore, Clark was required to give a bond, as provided for by Section 1040, Revised Statutes 1919, now Section 2890, Revised Statutes 1929, as amended by Laws, 1925, page 127, 1 Missouri Annotated Statutes, page 744.

By the contract here in question Clark sublet the installation of the metal door frames and partitions, as was contemplated on pages 23 to 25, inclusive, of the specifications governing the construction of the building. The specifications called for the material to be equal to that manufactured by the Jamestown Metal Door Company or the Dahlstrom Metallic Door Company. In the contract of

subletting, entered into by Clark as the party of the first part and Sears and Piou parties of the second part, we find the following clause, which is the main subject of dispute:

"It is understood that the Party of the Second Part is acting as agent for the Dahlstrom Metallic Door Co., who will furnish the hollow metal material in accordance with their standard practice and as called for in the plans and specifications for the above named institution."

At the first trial, the lower court held that the clause quoted made the contract that of the Dahlstrom Company, and that plaintiffs could not recover for the items furnished by that company. Plaintiffs offered to introduce evidence to prove that the contract was not in fact the contract of the Dahlstrom Company and that the parties by their conduct had not so treated it. This evidence was rejected by the trial court. The St. Louis Court of Appeals held that the contract was ambiguous. It remanded the case with instructions to the trial court to admit extrinsic evidence, if any plaintiff had, to show that the contract was in fact their own.

Plaintiffs at the second trial introduced evidence that they had an exclusive contract with the Dahlstrom Company to sell their product in the city of St. Louis, and for that reason the clause was placed in the contract to insure that they could furnish material in compliance with the specifications. H. H. Piou, one of plaintiffs, when asked why the clause quoted was placed in the contract, testified as follows:

"A. Well, the specifications specifically call for material—the hollow metal material had to be manufactured by Dahlstrom or one other competitor in Jamestown. Mr. Clark, in order to be sure that he was getting material to comply with specifications, insisted on having the name Dahlstrom mentioned and also wanted to be sure the material was paid for and he had the privilege of paying direct for it if he felt like it.

"Mr. Grand (Q.): Was there any other concern in the City of St. Louis that could furnish Dahlstrom material other than Sears & Piou? A. No. We had the exclusive right to sell it in St. Louis and Kansas City, and we still have.

"Q. Did you and Mr. Clark discuss that phase of the matter at all? A. Yes, we discussed that.

"Q. What was said? A. I told him we could furnish Dahlstrom material and the City liked Dahlstrom material because it was good material.

"Mr. Grand (Q.): What, if anything, did Mr. Clark say about inserting anything in the contract with reference to your agency here in St. Louis for Dahlstrom? A. Mr. Clark asked us to put the fact that we could furnish Dahlstrom material in the contract, embody it in the contract, and we put it in there."

Plaintiffs, under their contract, also furnished materials that were obtained from other manufacturing companies. There is also a provision in the contract that the material furnished by the Dahlstrom Company should be paid for by defendant Clark, direct to that company, the balance due on the contract to be paid to plaintiffs' Sears and Piou. Clark, by his contract with plaintiffs, agreed to pay $16,000 for all of the labor and material called for in the contract. For this item, Clark, under his contract with the city, received $17,336. Plaintiffs' petition sufficiently alleged compliance by them with their contract and a breach thereof by defendants.

Plaintiffs asked judgment for the penalty of the bond in the sum of $60,471.25 to be satisfied on the payment of the balance due plaintiffs on the contract in the sum of $6,693.84, and interest at six per cent per annum from the tenth day of October, 1925. Defendant Surety Company filed an answer admitting the execution of the bond. Its defense, as pleaded in the answer, was "that plaintiffs are neither material-men, laboring-men nor mechanics, and by the terms of said bond none other can maintain any suit on said bond." Defendant Surety Company further alleged that the failure of Clark to pay a subcontractor was not a breach of the bond. Defendant Clark filed a separate answer in substance the same as that of defendant Surety Company coupled with a general denial. Defendant Clark also filed a counterclaim in two counts. In the first count Clark asked damages in the sum of $2,011.17, which he alleged was sustained by him on account of the failure of plaintiffs to complete their contract within a reasonable time. In the second count he asked judgment for $225.75, alleged to be due him, by plaintiffs, for insurance paid in the sum of $11.25, and $214.50 expended for labor and trucking material for and on behalf of plaintiffs. The jury returned a verdict for plaintiffs against both defendants in the sum of $6,600 and interest in the sum of $2,178, a total of $8,778. The jury found for defendant Clark on the first count of the counterclaim in the sum of $214.50, and found against him on the second count.

The principal contention, made by appellants for a reversal of this case, is that the trial court erred in not sustaining a demurrer to the evidence. The St. Louis Court of Appeals, by its opinion, practically settled that question. It reversed and remanded the case with instructions to permit plaintiffs to introduce evidence that plaintiffs were the real parties to the contract. At the second trial plaintiffs introduced such evidence. The contract itself, as the Court of Appeals pointed out, personally bound plaintiffs to perform the contract. The reason for the clause in the contract, referring to the Dahlstrom Company, is easily understood when one considers the requirements of the specifications which called for material equal to that manufactured by the Dahlstrom Company. There was also

evidence tending to prove that the parties subsequently treated the contract as if it were between plaintiffs and defendant Clark. The evidence introduced was ample to support a finding that plaintiffs were the real parties to the contract. There was positive and direct evidence that plaintiffs fully complied with their contract. Defendants did not dispute the fact that the material and labor, called for in the contract, were furnished. Defendants, by evidence offered in support of their answers and counterclaims, virtually admitted that the material was furnished. Clark, in support of the first count of his counterclaim, offered evidence that plaintiffs, by their failure to timely complete their contract, caused an unreasonable delay in the completion of the building, thereby compelling Clark to expend the sum of $2,011.17. Clark also offered evidence in support of the second count of his counterclaim that he expended the sum of $214.50 in trucking the material to the building grounds. This is the exact amount for which the jury found for Clark on the first count of his counterclaim. As to this, further comment will be made later in the opinion.

Appellants' contention that the trial court erred in not sustaining a demurrer to the evidence is, therefore, without merit. Plaintiffs offered substantial evidence that the contract was their own. There was also ample evidence from which the jury could find that plaintiffs fully complied with their contract and that defendant Clark had not paid plaintiffs the amount sued for in this case.

■ Appellants in their assignment of errors complained of Instruction No. 1, given by the court at plaintiffs' request. The objection to this instruction was that it submitted to the jury's determination a proposition or question of law. That is, the jury, under the instruction, was required to decide whether or not the contract was plaintiffs' contract or that of the Dahlstrom Company. The Court of Appeals held the contract to be ambiguous. It also held that extrinsic evidence should be admitted on the question of whether the contract was that of plaintiffs or whether plaintiffs were acting as agents for the Dahlstrom Company. Therefore, it was not a question of construing the terms of the contract, but a question of whose contract it was. This was a question of fact for a jury and not a question of law for the court. The instruction was, therefore, proper. [Glaser v. St. Louis University, 293 S. W. (Mo. App.) l. c. 435 (6, 7); 13 C. J. 785, sec. 997; Estes v. Anderson Oil Co. et al. (Ind.), 176 N. E. l. c. 562 (3); Miller Cattle Co. v. Francis (Ariz.), 298 Pac. l. c. 633 (7, 8); Hayday v. Hammermill Paper Co. (Minn.), 237 N. W. l. c. 602, 603 (2); Fulton v. Henrico Lumber Co. (Va.), 148 S. E. l. c. 577 (1, 2); Walden v. Fallis (Ark.), 283 S. W. 17, 45 A. L. R. 1396; Ries v. Dodson, 46 Fed. (2d) 68.]

■ Appellant Surety Company contends that the trial court er-

roneously admitted in evidence certain admissions of defendant Clark. It is argued that these admissions were not binding on the Surety Company. This question was fully considered on the first appeal and decided adversely to appellant Surety Company. [See City of St. Louis ex rel. v. Clark, 35 S. W. (2d) 1. c. 992.] The trial court followed the ruling of the Court of Appeals. We hold that the Court of Appeals ruled correctly and, therefore, that ruling became the law of the case. [State of Kansas v. United States Fidelity & Guaranty Co., 328 Mo. 295, 40 S. W. (2d) 1. c. 1052 (1, 2) and cases there cited.]

The next contentions, made by appellants, are rather unique to say the least. It is urged that plaintiffs, personally, did not perform any labor but instead hired and paid laborers to do the work necessary for the completion of plaintiffs' contract. It is argued that plaintiffs cannot recover for labor performed by others. It is further contended that a subcontractor had no right of action on the bond. Reference to a few Missouri cases will dispose of these contentions. Plaintiffs' cause of action was based on their contract with the original contractor. The price in the contract was, therefore, prima facie evidence of the reasonable value of the material furnished and the labor performed under the contract. [Cabool School District v. United States Fidelity & Guaranty Co., 9 S. W. (2d) 1. c. 105 (5, 6).] The Springfield Court of Appeals correctly stated the law as follows:

"The bids as made by relators were accepted by the original contractor, and the bids and their acceptance constituted the contract between relators and Mann, the original contractor. These bids were introduced in evidence. By the bids and their acceptance the relators and the original contractor agreed upon the price of the material and labor necessary to install the plumbing and heating system; and the price agreed upon was prima facie the reasonable value thereof. [Mitchell Planing-Mill Co. v. Allison, 138 Mo. 50, 40 S. W. 118, 60 Am. St. Rep. 544.]"

See, also, State ex rel. v. Southern Surety Co. (Mo. App.), 294 S. W. 1. c. 130 (20, 21). The case of Lincoln County v. E. I. Du Pont De Nemours & Co. et al., 32 S. W. (2d) 292 (St. Louis Court of Appeals) is cited as authority for appellants' contention. In that case it was held that a subcontractor, who had contracted to haul rock at sixty cents per cubic yard for the original contractor, could not recover on the bond because he had not personally driven the trucks by which the rock was hauled, but had hired men to drive them. The court held that the right to recover under the statutory bond, provided for in Section 2890, supra, was limited to those personally performing labor and did not extend to persons hiring labor. In other words had the subcontractor in that case personally hauled

the rock in a wheelbarrow to its proper destination and performed manual labor like unto that of the builders of the pyramids of Egypt, nearly three thousand years B. C., he could have recovered his full contract price. Since, however, he performed his contract in the modern way and employed truck drivers to drive trucks and deliver the rock, he could not recover on the bond which was given by the original contractor to insure the "payment of material used in such work and for all labor performed in such work, whether by sub-contractor or otherwise." In so holding the Court of Appeals placed a narrow construction on the statute. In State ex rel. Winebrenner v. Detroit Fidelity & Surety Co., 326 Mo. 648, 32 S. W. (2d) 572, l. c. 575 (3-6), it was held that the statute in question must be liberally construed. A liberal construction of the statute is not necessary to bind the surety on a bond of an original contractor to pay a sub-contractor for furnishing material and labor performed under a subletting contract. A mere reading of the statute should answer that question. Courts should not close their eyes to present day methods of transacting business. Statutes should be construed in the light of these methods. The legislatures deal with conditions as they exist. When Section 2890 was enacted, giving subcontractors a right to sue on a bond of an original contractor for material furnished and labor performed on public works, it certainly could not have been intended to limit liability on the bond to the labor personally performed by a subcontractor. If so, why was the word subcontractor placed in the statute? If a subcontractor is limited in his recovery to the labor personally performed then the provision in the statute "whether by subcontractor or otherwise" is meaningless. The right to sue on the bond for labor personally performed is given him, under the statute, without the clause referring to sub-contractors. The wording of the statute plainly includes all labor necessarily furnished by a subcontractor for the fulfillment of his contract. The bond required to be given for public building projects takes the place to a great extent of the Mechanics' Lien Law governing commercial buildings. In 40 Corpus Juris, page 141, subject, Mechanics' Liens, we read:

"A subcontractor as such is entitled to a lien for labor and material furnished and paid for by him in the performance of his contract. In other words a subcontractor is entitled to a lien not only for his own labor, but also for labor furnished by him and actually performed by other persons whom he employs. Under a few statutes a subcontractor is not entitled to a lien for materials furnished by him."

The Lincoln County case, supra, is indirectly in conflict with State ex rel. Southern Surety Co., supra. In the latter case the Springfield Court of Appeals held the Surety Company primarily liable on

a bond to a subcontractor, where the original contractor failed to pay all lawful claims for materials furnished or labor performed in the construction of a highway. The subcontractor had agreed to remove an old bridge for the sum of $1200. It was held that the subcontractor was fully protected by the bond. While the opinion does not disclose the fact, we take it for granted that the subcontractor did not personally and by his own labor remove the old bridge. The court further declared the law that in construing contracts of a surety for hire "the rule of *strictissimi juris* is greatly relaxed, and the rule that sureties are the favorites of the law does not apply." [See 294 S. W. l. c. 130. See, also, Board of Education v. Fidelity & Guaranty Co., 149 S. W. 46, 166 Mo. App. 410; State ex rel. v. Roth, 330 Mo. 105, 49 S. W. (2d) l. c. 111 (7).] The above cases also hold that the statute, requiring the bond, must be read into the bond. That, however, is not necessary in this case. The bond, given by defendant Surety Company, is as broad if not broader than the statute. It requires that Clark "pay to the proper parties all amounts due for material and labor used and employed in the performance thereof." The ruling in the Lincoln County v. Du Pont case, supra, and other cases ·to the same effect on the point discussed should not be followed. It has been definitely decided by this court that a subcontractor has a right to sue on the statutory bond given in pursuance of Section 2890, supra, even if the subcontractor is not mentioned in the bond. [Fogarty v. Davis, 264 S. W. l. c. 880 (1, 2), 305 Mo. 288.] The amount to be recovered in cases of this nature is ordinarily the contract price. [State ex rel. v. Southern Surety Co., supra.]

■ Complaint is made that the jury disregarded the evidence in support of the second count of Clark's counterclaim. It was admitted that Clark paid the sum of $214.50 for trucking material on plaintiffs' behalf. This was an admission by plaintiffs of their liability on the second count. It will be noted, however, that the jury found for Clark on the first count for the exact amount admitted to be due on the second count. The jury evidently, through an oversight, found for Clark on the first count when it should have been on the second count. There was sharp dispute as to liability on count number one. From the record it appears to us that Clark failed to prove by satisfactory evidence any damages to have justified the jury in finding for him on this count. The trial judge, who heard the case, must have been of the same opinion. These matters were called to his attention and the motion for new trial was overruled. The error in the verdict was not prejudicial to defendant Clark and does not justify a retrial of the case.

■ Appellants make the point in their brief that the judgment should have been for the amount of the penalty of the bond and not

for the amount of damages assessed. In this appellants are correct. However, no mention was made of this in their motions for a new trial. No motion in arrest was filed. The error does not require a retrial of the case. It may be cured by modifying the judgment of the circuit court so as to read for the penalty of the bond, that is in the sum of $60,471.25, to be satisfied on the payment of the amount of damages assessed, to-wit, the sum of $8,778 with interest at six per cent per annum from the date of judgment in the circuit court. Defendant Clark should have judgment on his counterclaim in the sum of $214.50 and interest from date of judgment.

As modified, the judgment of the circuit court will be affirmed. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Tipton, J.,* and *Ellison, P. J.,* concur; *Leedy, J.,* not sitting.