MINNEAPOLIS-HONEYWELL REGULATOR COMPANY, A CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, PLAINTIFF-APPELLANT, v. TERMINAL CONSTRUCTION CORPORATION, A CORPORATION, AND AMERICAN SURETY COMPANY OF NEW YORK, A CORPORATION, DEFENDANTS-RESPONDENTS.

Argued December 3, 1963—Decided February 17, 1964.

*Mr. Lawrence B. Raff* argued the cause for plaintiff-appellant (*Messrs. Raff, Sherman & Scheider,* attorneys).

*Mr. Aaron Heller* argued the cause for defendants-respondents (*Messrs. Heller & Laiks,* attorneys).

The opinion of the court was delivered by

FRANCIS, J.   On August 6, 1959 defendant Terminal Construction Corporation as general contractor executed a contract with the United States, Department of the Navy, for the construction of an Armed Services Housing Project at the McGuire Air Force Base, Wrightstown, Burlington County, New Jersey.   Defendant American Surety Company issued a payment bond covering the project, with Terminal as principal, to secure, among other things, the prompt payment of suppliers of labor and materials to subcontractors of Terminal.   Plaintiff Minneapolis-Honeywell Regulator Company allegedly supplied labor and materials to a subcontractor and on July 28, 1961 brought this suit in the Superior Court, Law Division, Essex County against Terminal and American on the bond to recover the balance of $181,906.64 due from the subcontractor.

The surety bond extends its protection to a claimant who has "a direct contract with the principal or with a subcontractor of the principal who has furnished labor, material, or both in the prosecution of the work provided for in the contract and who has not been paid in full therefor."   It provides also:

"No suit or action shall be commenced hereunder by any claimant,
\*       \*       \*       \*       \*       \*       \*       \*
(c) Other than in a state court of competent jurisdiction in and for the county or other political sub-division of the state in which the project, or any part thereof is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated and not elsewhere."

At the pretrial conference defendants were given leave to move to amend their answer to include as a defense that the

New Jersey courts were without jurisdiction to entertain the suit because jurisdiction under the Miller Act, 40 *U. S. C. A.* §§ 270a, 270b, which defendants claimed controlled suits on such bonds, was limited to the United States District Court for the district where the construction work was performed. Subsequently defendants moved to dismiss the complaint because the Superior Court lacked jurisdiction over the subject matter under that act. The motion was granted on the basis of the decision of this Court in *Gypsum Contractors, Inc. v. American Surety Co.,* 37 *N. J.* 315 (1962). Appeal was taken to the Appellate Division but we certified on our own motion before argument there.

On the appeal plaintiff challenged the applicability of *Gypsum Contractors, Inc. v. American Surety Company* and asks us, in any event, to review our holding in the light of two subsequent decisions in Federal Circuit Courts of Appeal, *United States for Use and Benefit of Miles Lumber Co. v. Harrison & Grimshaw Construction Co.,* 305 *F.* 2d 363 (10 *Cir.* 1962), *cert.* den. 371 *U. S.* 920, 83 *S. Ct.* 287, 9 *L. Ed.* 2d 229 (1962); and *Continental Casualty Co. v. United States, etc.,* 305 *F.* 2d 794 (8 *Cir.* 1962), *cert.* den. 371 *U. S.* 922, 83 *S. Ct.* 290, 9 *L. Ed.* 2d 231 (1962).

In order to bring the problem presented into focus it is necessary to retrace our steps through some of the material discussed in *Gypsum.*

The Miller Act, 40 *U. S. C. A.* § 270a, is a comprehensive statute imposing on contractors a requirement for surety bonds as a condition precedent to the award of construction contracts. It provides:

"(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, * * *
(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.
(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and

material in the prosecution of the work provided for in said contract for the use of each such person. * * *"

*Section* 270b(a) gives a right of suit on the payment bond to every person who has furnished labor or material under the construction contract and who has not been paid within 90 days after the day on which the last of the labor was performed or material furnished by him. Persons having no direct contractual relationship, express or implied with the contractor, who supply subcontractors may sue on the bond upon giving written notice to the contractor by registered mail within 90 days from the date on which such person performed the last labor or supplied the last of the material, stating "with substantial accuracy the amount claimed and the name of the party to whom the material was furnished" or the labor performed.

*Section* 270b(b) specifies the forum for the bringing of the suit. It says:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed *and not elsewhere,* irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. * * *" (Emphasis supplied)

Obviously the Miller Act as remedial legislation is entitled to liberal construction to these ends: first, protection of laborers and materialmen who aid in performance of construction contracts for public work; second, protection of the United States; and, third, provision for an orderly way of enforcing all claims in a federal district where the contract is to be performed. Under earlier legislation suits on such bonds could have been brought in any proper State court. *United States to Use of Edward Hines Lumber Co. v. Henderlong,* 102 *F.* 2 (*C. C. Ind.* 1900).

As we pointed out in *Gypsum* the weight of authority throughout the country indicates that the § 270b(b) require-

ment for institution of suit on the bond in a district court where the construction contract was to be performed "and not elsewhere" represents positive Congressional policy and controls the selection of the forum where action may be brought. 37 *N. J.*, at *pp*. 319, 320 and cases cited. See also *Travis Equipment Co. v. D. & L. Construction Co.*, 224 *F. Supp*. 410 (*W. D. Mo*. Nov. 21, 1963); *United States for Use and Benefit of Bryant Elec. Co. v. Aetna Casualty & Surety Co.*, 297 *F.* 2*d* 665, 667, 669 (2 *Cir*. 1962); *Pierce Contractors, Inc. v. Peerless Casualty Co.*, 81 *So.* 2*d* 747 (*Fla. Sup. Ct*. 1955); *People v. Metropolitan Surety Co.*, 211 *N. Y.* 107, 105 *N. E.* 99 (*Ct. App*. 1914).

In *People v. Metropolitan Surety Co., supra,* the New York Court of Appeals discussing the same jurisdictional limitation in the Heard Act which preceded the Miller Act said:

"The claimant could reach the surety company through the bond alone, which, with the statute as a part of it, defines and limits the rights of the claimant as against it, and the method and tribunals through which those rights might be enforced. His right of action against it through any form of legal proceeding was created by the bond and the statute, and must be enforced pursuant to the terms and conditions of the statute and not otherwise." 105 *N. E.*, at *p.* 101.

See also *United States for Use and Benefit of Noland Co. v. Skinner and Ruddock,* 164 *F. Supp.* 616 (*E. D. S. Car.* 1958).

Congress adopted the Capehart Act in 1955. 42 *U. S. C. A.* § 1594, *L.* 1955, *c.* 783, 69 *Stat.* 651. It authorized the Secretary of Defense or his designee to make contracts for the "construction of urgently needed housing *on lands owned or leased* by the United States and situated on or near a military reservation or installation for the purpose of providing suitable living accommodations for military personnel of the armed services assigned to duty at the military installation at or in, the area where the housing is situated. * * *" § 1594 (a). (Emphasis added) Congress recognized that budgetary conditions would not permit the expenditure in one or two

fiscal years of the large sums currently needed for the purpose. So it authorized construction of the housing projects with the aid of mortgages guaranteed by the Federal Housing Administration, the mortgages to be paid for by the Secretary of Defense from quarters allowances of eligible service personnel. House Report No. 2363, 84th Congress, 2d Session, 3 *U. S. Code, Cong. & Adm. News, pp.* 4509, 4546 (1956).

The report of the ·Congressional Committee which accompanied the bill to the House, gives a clear idea of the public importance of military housing. It said:

"The armed services of today need and must have the highest caliber of men. The technological advance in all services has placed them in the position of trying not only to attract but also to retain men who are also being sought by civilian industry.

Admittedly the lack of sufficient and adequate housing is not the only factor making it difficult for our armed services to attract and retain a high proportion of the type of personnel now required. It is generally recognized, however, that the sufficiency and adequacy of housing has perhaps a greater influence upon retainability than almost any other single factor.

Your committee shares the keen desire of the military to improve the efficiency and morale of the soldiers, sailors and airmen of our Armed Forces by assuring them of an adequate supply of good housing at a reasonable cost. We believe that Title VI of the bill would go far toward achieving that most worthy and vital objective." House Report, *supra*, at *p.* 4546.

Under the act the construction contract is required to contain such terms and conditions as the Secretary of Defense may determine to be necessary to protect the interest of the United States. One such mandatory condition is that "each housing unit in the project shall be placed under the control of the Secretary of Defense, or his designee, as soon as the unit is available for occupancy." § 1594(a).

When the act was passed it contained no provision for the furnishing of payment or performance bonds by the contractor. If erection of military housing constitutes "construction * * * of any public building or public work of the United States" within the contemplation of § 270a of the

comprehensive Miller Act, then its bond requirements would be applicable and a specific direction therefor would not be necessary in the Capehart Act. It is fairly inferable that such was the thinking of Congress.

In any event, as we said in *Gypsum*, we have no doubt in view of the highly remedial purposes of the Miller Act that it would encompass contracts under the Capehart Act for the construction of housing for military personnel on land owned or leased by the United States on or near military bases. 37 *N. J.*, at *pp.* 320, 321; and see *United States for Use and Benefit of Miles Lumber Co. v. Harrison and Grimshaw Construction Co., supra*, 305 *F.* 2d, at *p.* 369 (dissenting opinion); *Title Guaranty & Trust Co. v. Crane Co.*, 219 *U. S.* 24, 31 *S. Ct.* 140, 55 *L. Ed.* 72 (1910); *Lasley v. United States, etc.*, 285 *F.* 2d 98, 100 (5 *Cir.* 1960); *Travis Equipment Co. v. D. & L. Construction Co., supra* (224 *F. Supp.* 410); Note, "Government Contracts," 111 *U. Pa. L. Rev.* 1014, 1016 (May 1963); *contra, United States v. Harrison and Grimshaw Construction Co., supra* (305 *F.* 2d, at *pp.* 366–367). Once the Miller and Capehart Acts are recognized as *in pari materia* it would follow, as indicated in *Gypsum*, that Miller Act bonds would have to be furnished by Capehart Act contractors and that the jurisdictional limitation on available suit forum on the bonds prescribed by § 270b(b) of the Miller Act would be applicable.

But subsequent Congressional treatment of the Capehart Act indicates that there was some uncertainty as to whether its original form subjected contractors to the Miller Act bond requirement. In 1956 an amendment was proposed and adopted which was supposed to clarify the matter. It has remained unchanged since 1956 and says:

"Any such [construction] contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 270a of Title 40, and no additional bonds shall be required under such section." *L.* 1956, *c.* 1029, 70 *Stat.* 1110 (Insertion ours)

It may be noted that the amendment qualifies the bond provided for as "sufficient compliance with § 270a" of the Miller Act. It is subsection (b) of *section* 270b which limits the forum for action on the Miller Act bond to the United States District Court for the district where the construction work is to be performed.

One matter on which everyone seems agreed is that the ambiguity or uncertainty in the Capehart Act, if it existed, was not cleared up by the 1956 amendment. Certainly this is true with respect to the jurisdictional limitations of subsection (b) of *section* 270b.

In *Gypsum* the Department of the Air Force executed contracts for the construction of housing for military personnel at the air force base in Syracuse, New York. The contractors furnished a surety bond to secure payment to laborers and materialmen which was approved by the Secretary of Defense or his designee. It contained a clause authorizing suit thereon in a state court of competent jurisdiction in the county in which the housing project was situated, or in the United States District Court where the project was situated "and not elsewhere." Plaintiff, an unpaid subcontractor, brought suit on the bond, not in a state court of New York in the county where Syracuse is located, but in the Law Division of the New Jersey Superior Court. The surety contended our courts could not entertain the action because jurisdiction under *section* 270b(b) of the Miller Act was in the United States District Court for the appropriate New York district.

Solution of the problem depended upon the Congressional intention in enacting the 1956 amendment to the Capehart Act. Is construction of housing for military personnel as authorized by the Capehart Act a public work so as to bring a contract therefor within the bond requirement of the Miller Act? If so, did the jurisdictional limitation of *section* 270b (b) of the latter statute remain unaffected by the Capehart amendment authorizing the Secretary of Defense or his designee to accept a satisfactory surety bond as "sufficient compliance" with *section* 270a of the Miller Act? As an aside,

the implication from the language is plain that Congress considered Capehart housing projects public works and therefore within the ambit of Miller Act bond requirements. If this were not so, there would have been no need for Congress to declare a Secretary of Defense approved bond to be a "sufficient compliance" with *section* 270a of the latter enactment. *United States to Use of Acme Furnace Fitting Co. v. Fort George G. Meade, etc.,* 186 *F. Supp.* 639 (*D. C. Md.* 1960). In seeking the answer to proper construction of an allegedly ambiguous Congressional enactment, state courts naturally look to decisions of Federal courts for guidance.

Study of the Miller Act, its forerunners, the Capehart Act and the decision of the Fifth Circuit in *Lasley v. United States, etc., supra,* as well as the footnotes of the Second Circuit in *United States for Use and Benefit of Bryant Elec. Co. v. Aetna Casualty & Surety Company, supra,* 297 *F. 2d,* at *pp.* 667–669, *fns.* 1, 8 and 9, and *United States to Use of Acme Furnace Fitting Co. v. Fort George G. Meade, etc., supra, Autrey v. Williams & Dunlap,* 185 *F. Supp.* 802 (*W. D. La.* 1960), *United States for Use of James F. O'Neil Co. v. Malan Construction Corp.,* 168 *F. Supp.* 255 (*E. D. Tenn.* 1958), led us to conclude that our Superior Court had no jurisdiction to hear Gypsum's action. 37 *N. J.,* at *pp.* 319–325.

Subsequent to our determination in *Gypsum,* Courts of Appeal for the Eighth and Tenth Circuits handed down decisions which took a substantially contrary view of the applicability of the Miller Act to Capehart Act projects. *United States for Use and Benefit of Miles Lumber Co. v. Harrison and Grimshaw Construction Co., supra; Continental Casualty Company v. United States, supra.*

In *United States for Use and Benefit of Miles Lumber Co. v. Harrison and Grimshaw Construction Co.,* the majority opinion of the Tenth Circuit held that construction of housing for military personnel as regulated by the Capehart Act was not a public work, and therefore the Miller Act need not be complied with. Such housing was said to be "a private enterprise and not a public work * * *," and "[i]n such

circumstances the Miller Act does not apply." 305 *F. 2d*, at *p*. 367. The court felt that the 1956 Congressional authorization for the furnishing of a bond satisfactory to the Secretary of Defense or his designee revealed a recognition of the peculiar characteristics of a Capehart Act project and an intention to confer discretion on the Secretary of Defense as to the nature of the bond to be required of the contractor. Therefore, the opinion continued, since those charged with the administration of the Capehart Act, such as the Secretary of Defense, had interpreted the 1956 amendment to authorize approval of a satisfactory bond, and since the bond in question had been approved and was in general use, its provisions relating to notice of claim by a subcontractor controlled even though at odds with the Miller Act.

The exclusive jurisdiction clause of *subsection* 270b(b) of the Miller Act was not involved in the case. The majority opinion, however, plainly indicates that such limitation would not be considered controlling if it were not included in the bond approved by the Secretary of Defense. The majority pointed out that even though not a Miller Act instrument the bond was one executed under a "law of the United States" and therefore under 28 *U. S. C. A.* § 1352 the Federal District Court would have concurrent jurisdiction with any appropriate state court regardless of lack of diversity of citizenship or the requisite amount in controversy. Of course, that view point is correct. 28 *U. S. C. A.* § 1352 provides:

"The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States."

Were it not for this section of the Code, if a bond were required under a Federal law and a breach occurred, suit thereon could not be brought in a United States District Court unless diversity of citizenship existed between the surety and the claimant, and the amount involved met the jurisdictional requirement. Otherwise suit would be limited to the proper state court. The Congressional purpose in add-

ing *section* 1352 to the Code was to eliminate the normal prerequisites for Federal court action and to permit suit on any bond required to be furnished by national law without regard to those prerequisites. See Reviser's Note, 28 *U. S. C. A.* § 1352; *United States to Use of Edward Hines Lumber Co. v. Henderlong, supra,* 102 *F.,* at *p.* 5.

The motive in adding *section* 1352 was not, as has been suggested, to give state courts concurrent jurisdiction with United States courts on bonds required by a Federal law. Just the reverse is true. State courts would normally have authority to entertain actions for breach of such surety bonds unless, as in the case of true Miller Act bonds, Congress in imposing the duty to furnish the bond specifically limited suit thereon to a designated United States District Court and "not elsewhere." Nor was the purpose of Congress in enacting *section* 1352 to negate the express mandate of the Miller Act that suit on its bonds must be brought in any district where the construction work was performed. Obviously the specific jurisdictional limitation of the Miller Act would control the general suit authorization of *section* 1352. But to round out the discussion, if the Miller Act and its plain jurisdictional restriction do not control Capehart Act bonds, *section* 1352 of the Code would then be applicable and suit can be instituted in an appropriate United States district court even though diversity of citizenship and the ordinarily requisite sum in dispute are not present.

Coming back to *United States for Use and Benefit of Miles Lumber Co. v. Harrison and Grimshaw Construction Co.,* Judge Pikett dissented, citing *Gypsum Contractors, Inc. v. American Surety Co.* and the Federal cases referred to therein. In his view a Capehart military housing project is a public work within the meaning of the Miller Act, and therefore the provisions of *Section* 270b of that statute should be read into the bond. He said also:

"The administrative form for bonds apparently furnished for Capehart Act construction is not that contemplated by the Miller Act. If this is to be considered as an administrative interpretation that

the Miller Act was not applicable, then I think the interpretation was wrong. There could be no purpose or reason for Congress to state that the furnishing of a bond should be deemed a sufficient compliance with the provisions of Section 1 of the Miller Act [*i. e.* § 270a] if it was not intended that the bond furnished would be considered a Miller Act bond from that point forward." (Insertion ours)

In *Continental Casualty Co. v. United States, supra,* a bond was given by the contractor to secure performance and payment of laborers and materialmen under a Capehart Act contract for the construction of housing for military personnel. The contractor failed to pay a materialman who instituted suit on the bond. The surety defended on the ground that the materialman had failed to give notice of the claim as required by the bond. Plaintiff contended that the notice requirements of the bond were invalid because more stringent than those required by *section* 270b of the Miller Act, which, it urged, was controlling. The argument was that since the 1956 amendment of the Capehart Act "modified only the prior existing substantive obligations of the contractors to furnish bonds meeting the requirements of 40 *U. S. C. A.* § 270a, the procedural provisions of the other sections of the Miller Act still apply to Capehart housing."

The Eighth Circuit rejected the contention saying:

"* * * While we think that Congress intended that Capehart suppliers should have substantive bond protection essentially similar to that afforded Miller Act suppliers, we think also that Congress intended that the procedural provisions of Capehart bonds should be worked out and prescribed by the two agencies involved in the light of the unique nature of Capehart construction and of the peculiar problems which might be encountered in connection with such construction. In our estimation had Congress intended for the procedural provisions of the Miller Act to apply to Capehart contractors and their sureties it simply would have said so." 305 *F.* 2d, at *p.* 799.

* * * * * * * *

"* * * [A]nd when Congress said in the Capehart Act that the giving of a bond satisfactory to the Secretary of Defense or his designee should constitute compliance with the section of the Miller Act which requires that a bond be given, we think that the clear import of the language used was to take Capehart bonds entirely out of the Miller Act." 305 *F.* 2d, at *pp.* 799–800.

Accordingly the surety's defense was sustained and the materialman's claim was dismissed.

Judge Blackmun concurred "although somewhat hesitatingly," the case being "a very close one." He appreciated the significance of the existing authorities, "to which might now be added *Gypsum Contractors, Inc. v. American Surety Co.*, 37 *N. J.* 315, 181 *A. 2d* 174 (1962)." But he was "persuaded * * * by the agency practice; * * * by the feeling that the surety's obligation here should be measured by its contract, particularly where the rights of a non-party are concerned and where, as contrasted with the Miller Act, the statute is so unclear; [and] by the absence of helpful material in the legislative history; * * *." 305 *F. 2d,* at *p.* 800.

The most recent Federal case on the subject is *Travis Equipment Co., Inc. v. D & L Construction Co., supra.* There the issue was whether the time limitation on the institution of suit by a materialman is controlled by the pertinent clause in the Capehart Act bond or by the provision in *section* 270b of the Miller Act. The district court declared that the bond was required of the contractor because of the Miller Act and that as a matter both of jurisdiction and of substantive law the Miller Act expressly limited the life of the cause of action created by it. Consequently, the suit was dismissed as barred by the statutory provision, although it was instituted within the period prescribed by the bond. The court held that the life of such a statutory cause of action cannot be extended by the insertion in the bond (with the approval of the Secretary of Defense) of a conflicting longer period, in the absence of express Congressional authority which was found to be "totally lacking."

The problem whether the suit limitation period set out in a Capehart bond or in the Miller Act is controlling is not before us and it is unnecessary to express an opinion thereon. Reference is made to the case principally because the District Judge indicated his "substantial agreement with what was said and done by the Supreme Court of New Jersey in *Gypsum Contractors, Inc. v. American Surety Co.," supra,* and because of

his reference to the "judicial chaos" on the subject which is developing at a "rapid rate."

As has been noted above, we have been asked to review our holding in *Gypsum* in light of the more recent Federal court opinions. Moreover, in this case, unlike the situation in *Gypsum,* the limitation period set out in the bond and the Miller Act for institution of suit has expired and plaintiff could not prosecute its claim in the United States District Court for the District of New Jersey, if the dismissal below is sustained. The quest for the just and proper construction of the Miller and Capehart Acts as they relate to the present case must be engaged in with a responsiveness to developing Federal law on the subject. The obligation to do so is emphasized here because both Congressional enactments represent remedial legislation and call for liberal construction to the end that materialmen who aid in the construction of housing for military personnel may receive reasonable protection. Unquestionably the cases of *United States for Use and Benefit of Miles Lumber Co. v. Harrison and Grimshaw Construction Co.* and *Continental Casualty Company v. United States* cast doubt on what might appear to be the full scope of the interpretation we adopted in *Gypsum.* Obviously state courts should follow authoritative Federal cases construing Federal statutes. Where a conflict exists among them, with no final word from the United States Supreme Court, and each of the two conflicting interpretations can find reasonable support in the wording of the statute, thus leaving a choice to the state courts, the path chosen should be that which leads to the more just result under the circumstances of the particular case in light of the basic remedial purposes of the legislation. Viewed in this perspective the influence of the Eighth and Tenth Circuit opinions becomes more persuasive, and moves us to accept their conclusions as providing the solution for the present case.

It follows from the two cases referred to that by the 1956 amendment to the Capehart Act Congress intended to authorize the Secretary of Defense to exercise his discretion as to

the type of bond to be required of military housing project contractors. We cannot say that view unduly strains the unclear language of the statute. Moreover, we find in the hearings before the House of Representatives Committee on Banking and Currency a pertinent letter to the Committee from the Assistant Secretary of Defense. This letter dated June 4, 1956 (which has not been referred to in any of the reported cases we have seen), proposes the amendment in these terms:

"It is also recommended that H. R. 10157 be amended to make it clear that the provisions of the Miller Act (40 *U. S. C.* 270a) are not applicable to Title VIII housing. It appears more appropriate to provide for use of the F. H. A. dual obligee bond form for both performance and payment bonds. The cost of the F. H. A. bond is substantially less than the cost of bonds required by the Miller Act for public works, so that the proposed amendment will serve to decrease the cost of construction and otherwise facilitate contractual relationships. Accordingly, it is suggested that the following amendment be added to the bill:

'Section 403(a) of the Housing Amendments of 1955 is amended by adding before the final sentence thereof the following:

"Any such contract shall provide for the furnishing by the Contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Commissioner and the Secretary of Defense, or their designees, and the furnishing of such bonds shall be deemed sufficient compliance with the provisions of section 1 of the Act of August 24, 1935, [Miller Act] and no additional bonds will be required under such section." ' " Hearings on H. R. 10157 Before the House Committee on Banking & Currency, 84th Congress, 2d Session 195–196 (1956). (Insertion ours)

Attention is drawn immediately to the fact that except for striking out the reference to the "Commissioner" (apparently the Housing Commissioner), Congress enacted the amendment in the form suggested by the Assistant Secretary of Defense. His letter refers to *section* 270a of the Miller Act and so does not eliminate all doubt as to the authority of the Secretary of Defense to change or enlarge the jurisdictional qualifications set forth in *section* 270b(b) on bond suits. Nevertheless the broad language used therein, *i. e.*, that the amendment be adopted to "make it clear that the provisions of the Miller Act (40 *U. S. C.* 270a) are not applicable to Title VIII housing" (which includes Capehart housing)

coupled with the reference to use of the approved F.H.A. type bond which contains the provision permitting suit in the appropriate state or federal court, should not be ignored. It lends persuasive force to the view expounded by the Eighth and Tenth 'Circuit Courts that by the 1956 amendment to the Capehart Act Congress intended to authorize the Secretary of Defense or his designee in his discretion to approve a bond which sanctioned the bringing of suit therein in a designated state court as well as in an appropriate United States District Court.

██ The action taken by the Law Division in dismissing the complaint herein is understandable in the light of our decision in *Gypsum*. We depart from what might be regarded as the full significance of the opinion voiced there under the circumstances of this litigation because of the later Federal cases to which reference has been made. We accept the view announced by those courts as reasonably expressive of a probable intention of Congress to permit furnishing of bonds by military housing contractors which did not conform with the requirements of the Miller Act, so long as the form thereof was satisfactory to the Secretary of Defense or his designee. Consequently there must be a reversal of the judgment below.

It does not follow from what has been said here that the decision in *Gypsum* would be otherwise, if the same question were presented again. On the facts there the result is in harmony with the view now expressed. As has been said above, the *Gypsum* bond provided for suit in the appropriate state court or federal district court where the construction work took place and not elsewhere. The work having been done in Syracuse, New York, suit in the New Jersey Superior Court was improper.

Certain additional contentions were advanced as a basis for sustaining plaintiff's suit: regardless of the 1956 amendment a Miller or Capehart Act surety can enlarge its liability by stipulation in its bond to be subject to suit in state as well as federal courts; the restriction imposed by *section* 270b(b) of the Miller Act on the suit forum relates to venue and not to

authority to entertain the action and, therefore, may be waived by the surety, either in the bond or by failing to raise an objection immediately on being subjected to suit in a state court. The result we have reached makes it unnecessary to discuss those matters.

The judgment is reversed and the cause is remanded for trial.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For affirmance*—None.