**KOPPERS COMPANY, Inc., Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, Inc., et al., Appellees.**

No. 17604.

United States Court of Appeals
Eighth Circuit.

Oct. 22, 1964.

Richard K. Andrews, of Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., made argument for appellant and filed brief with Roy P. Swanson, Kansas City, Mo., and Rotkin & Nazarian, Los Angeles, Cal.

John A. Biersmith, of Rafter, Biersmith, Miller & Walsh, Kansas City, Mo., made argument for appellees and filed brief.

Before MATTHES, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

We are confronted here with the question whether § 2(b) of the Miller Act,[1] 40 U.S.C. § 270b(b), applies to a claimant's suit on a Capehart Act payment bond so as to vest jurisdiction of the action exclusively in the appropriate federal court and to deny it to the state court. This is the second of two issues decided by the district court in an opinion applicable to a number of cases having to do with claims arising from Capehart housing at Fort Leonard Wood, Missouri. Travis Equip. Co. v. D & L Constr. Co. & Associates, 224 F.Supp. 410, 417–418 (W.D.Mo.1963).

The other issue decided by the court in that opinion was whether a claimant's action on a Capehart payment bond is subject to the limitation period specified by the same § 2(b) of the Miller Act. That issue is before us on a companion appeal by another supplier. We dispose of it in an opinion filed simultaneously with this one. Missouri-Illinois Tractor & Equip. Co. v. D & L Constr. Co. & Associates, 337 F.2d 507 (8 Cir. 1964).

We make, preliminarily, two general observations:

(a) Numerous cases emerging from the Capehart project at Fort Leonard Wood have come before the United States District Court for the Western District of Missouri. These concern many issues and many suppliers. See, in addition to the opinion below, United States for Use and Benefit of Fine v. Travelers Indem. Co., 215 F.Supp. 455 (W.D.Mo.1963, Judge Oliver); Triangle Elec. Supply Co. v. Mojave Elec. Co., 217 F.Supp. 913 (W.D.Mo.1963, Judge Oliver), affirmed

---

1. § 2(b). "Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him."

under the name of D & L Constr. Co. v. Triangle Elec. Supply Co., 332 F.2d 1009 (8 Cir. 1964); Allsop Lumber Co. v. Continental Cas. Co. (W.D.Mo.1963, Judge Duncan, unreported opinion), affirmed under the name of Continental Cas. Co. v. Allsop Lumber Co., 336 F.2d 445 (8 Cir. 1964), and Fine v. Travelers Indem. Co., 233 F.Supp. 672 (W.D.Mo.1964, Judge Oliver).

(b) The Miller Act, 40 U.S.C. §§ 270a–270d, and the Capehart Act, now part of the National Housing Act, 42 U.S.C. §§ 1594–1594j, and 12 U.S.C. §§ 1748–1748g, their purposes, the types of projects to which they respectively apply, and, to a large extent, their similarities and differences, and their interplay, have been considered and discussed by this court in some length and depth in three recent opinions. Continental Cas. Co. v. United States for Use and Benefit of Robertson Lumber Co., 305 F.2d 794 (8 Cir. 1962), cert. denied, 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231; D & L Constr. Co. v. Triangle Elec. Supply Co., supra, 332 F.2d 1009 (8 Cir. 1964); Continental Cas. Co. v. Allsop Lumber Co., supra, 336 F.2d 445 (8 Cir. 1964). It is not necessary to repeat those observations and discussions here. We make general reference to the three opinions and, in a sense, now continue from where those cases left us.

Koppers Company, Inc., instituted the present action in 1961 in the Circuit Court of Pulaski County, Missouri. It is a suit to recover $9,654.64 for materials furnished by Koppers to Mojave Electric Company, Inc., a subcontractor on the Capehart project at the Fort. Among the defendants are a joint venture, D & L Construction Company & Associates, the prime contractor, and Continental Casualty Company, Inc., its Capehart bond surety. Prior to the institution of the suit Mojave was adjudged a bankrupt. Continental and D & L removed the action to federal court on the ground that the suit was one on two bonds executed under a law of the United States within the meaning of the bond statute, 28 U.S.C. § 1352.[2] Those defendants then filed an answer alleging, among other things, the federal district court's lack of jurisdiction over the subject matter. Two years later the trial court's general opinion, 224 F.Supp. 410, to which reference has been made above, was issued. The defendants pursuant to the suggestion contained in that opinion, p. 418, thereupon moved to dismiss the action. That motion was sustained. From the order of dismissal the present appeal is taken.

The bonds in question state,

"No suit or action shall be commenced hereunder by any claimant * * (c) Other than in a State court of competent jurisdiction in and for the county or other political subdivision of the State in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated and not elsewhere."

We thus have, for what interest it may afford, a situation (a) where the bonds refer to "a State court of competent jurisdiction" and (b) where the amount which this particular claimant, Koppers, seeks to recover is less than that which would be required for an action under the present form of either 28 U.S.C. § 1332 (a) or § 1331.

█ It is to be noted that if § 2(b) of the Miller Act, 40 U.S.C. § 270b(b), is applicable to this Capehart action and federal court jurisdiction is exclusive, such jurisdiction is neither created nor acquired by the removal from the state court. Removal gives the federal court only derivative jurisdiction. This is no better than that possessed by the state

2. We have so held in opinions filed since the removal. Continental Cas. Co. v. Allsop Lumber Co., supra, p. 448 of 336 F.2d; D & L Constr. Co. v. Triangle Elec. Supply Co., supra, pp. 1011–1012 of 332 F.2d; Continental Cas. Co. v. United States for Use and Benefit of Robertson Lumber Co., supra, footnote 4, p. 798 of 305 F.2d.

court in which the action was begun. Thus, if jurisdiction is lacking in the state court in the first instance, it is not brought into being by the removal, even though the federal court to which the suit was removed would have had jurisdiction had the action originated there. This result offhand may seem somewhat anomalous but the law is well settled. Lambert Run Coal Co. v. Baltimore & O. R. R., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); Minnesota v. United States, 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939); Freeman v. Bee Machine Co., 319 U.S. 448, 449, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); Henderson v. Shell Oil Co., 173 F.2d 840, 842 (8 Cir. 1949).

This brings us, then, to the issue. We touched upon it and really decided it in Continental Cas. Co. v. Allsop Lumber Co., supra, when we were confronted with the question of the validity of out-of-state service upon individual defendants. We concluded that such service was valid, and we closed our comments (which were largely concerned with the holding and with the extent of application of certain conclusionary language in our earlier case of Continental Cas. Co. v. United States for Use and Benefit of Robertson Lumber Co., supra) upon this point with the following observation, p. 452 of 336 F.2d:

> "If strict logic perforce demands a conclusion that this decision is but another way of saying that § 270b (b) of the Miller Act has application to a Capehart bond suit, we may be understood as going that far in our present holding. This result is reached, we feel, without impinging in any way upon the authority of Robertson" (footnote omitted).

After careful reconsideration we perceive no convincing reason why we should depart from that conclusion in its application to the case at bar. The same factors which we mentioned in Allsop, p. 452, namely,

> " * * * the legislative history; the policy and the purpose behind the

Miller and the Capehart Acts; the variances in state law; the common characteristics of these construction projects; the fact that participants who join in them often come from various parts of the country; the realization that there is a need for a practicable and yet a fair and reasonable means of assembling in one forum all the interested parties who were ready enough initially to devote their constructional abilities to a project in the local area; the fact that the policy behind the Miller Act recognized and met that need; the added fact that the policy has equal application to Capehart construction; and the awareness that delay and expense otherwise to be incurred by multiple litigation in geographically separated forums will thereby be avoided * * *",

fortify us in this conclusion. Allsop is therefore governing here and compels an affirmance of the order of dismissal entered by the district court.

Koppers, however, urges upon us some cases and some factors which merit comment:

1. United States for Use and Benefit of Miles Lumber Co. v. Harrison & Grimshaw Constr. Co., 305 F.2d 363 (10 Cir. 1962), cert. denied 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229, was decided by a divided panel of the Tenth Circuit almost simultaneously with our decision in Robertson. The primary issue in Harrison and the sole issue in Robertson were the same, namely, whether the notice provision of a Capehart payment bond, which was more stringent than that of § 2(a) of the Miller Act, 40 U.S.C. § 270b (a), was to govern an action on that bond. Both we and the Tenth Circuit majority reached the same conclusion and held that, because the bond's notice provision was not satisfied, the complaint was to be dismissed. The Supreme Court denied certiorari in both cases on the same day.

The routes by which we and the Tenth Circuit majority reached our respective conclusions, however, were not at all the

.same. We reasoned, p. 799 of 305 F.2d, that while "Congress intended that Capehart suppliers should have substantive bond protection essentially similar to that afforded Miller Act suppliers", it also "intended that the procedural provisions of Capehart bonds should be worked out" by the administrative agencies; that the dual notice provision of the bond was neither unreasonable nor oppressive; and that it was valid. The Tenth Circuit majority, on the other hand, followed the lead of the district court from which its appeal had come and held that a Capehart project was not a "public work" within the meaning of § 1(a) of the Miller Act, 40 U.S.C. § 270a(a); that, p. 369 of 305 F.2d, "the Miller Act has no application to such a bond" ; and that, as a consequence, the bond's notice provision is vital. Judge Pickett, in dissent, pp. 369–371, strongly urged that a Capehart project was a public work within the meaning of the Miller Act and that the provisions of 40 U.S.C. § 270b, "including the notice requirement, should be read into the bond". Judge Pickett therefore disagreed in basic theory with his majority and evidently would have disagreed with our result in Robertson which upheld the bond's notice provision, although we did not there adopt the non-public work approach of the Tenth Circuit majority, and, in fact, observed that "Capehart housing is undoubtedly 'Government housing' ", p. 797 of 305 F.2d. Disagreement with the majority approach in Harrison seems to be expressed by the New Jersey court to some extent in Minneapolis-Honeywell Regulator Co. v. Terminal Constr. Corp., 41 N.J. 500, 197 A. 2d 557, 561–562 (1964), and in Gypsum Contractors, Inc. v. American Sur. Co., 37 N.J. 315, 181 A.2d 174, 177–178 (1962); by the Fifth Circuit in Lasley v. United States for Use of Westerman, 285 F.2d 98, 100 (5 Cir. 1960); and by the courts which decided Autrey v. Williams & Dunlap, 185 F.Supp. 802, 803 (W.D. La.1960), and United States to Use of Acme Furnace Fitting Co. v. Ft. George G. Meade Defense Housing Corp., 186 F. Supp. 639, 647–648 (D.Md.1960).

In Allsop we recognized our difference in theory from that of the Tenth Circuit and specifically differed with Harrison on the issue of the validity of out-of-state service on individual defendants, an issue as to which, presumably, Judge Pickett would have been in agreement with us.

We respect the opinion of the Tenth Circuit majority but, in view of the vigorous dissent there and our own holding in Allsop, we must adhere to the conclusion reached in Allsop until the Supreme Court tells us that we are mistaken.

2. Since Robertson and Harrison were decided, three state courts have held that Capehart bonds are, indeed, creatures of a different genus than Miller bonds; that the exclusive jurisdiction provisions of § 2(b) of the Miller Act, although governing Miller bond actions, did not apply to Capehart bonds; and that a state court has at least concurrent jurisdiction over a Capehart bond suit. Ireland's Lumber Yard v. Progressive Contractors, Inc., 122 N.W.2d 554, 556–561 (N.D.1963); Allsop Lumber Co. v. Continental Cas. Co., 73 N.M. 64, 385 P.2d 625, 628–629 (1963); Minneapolis-Honeywell Regulator Co. v. Terminal Constr. Corp., supra, 41 N.J. 500, 197 A.2d 557 (1964). We noted the existence of these cases in our third footnote in Allsop, supra, p. 453 of 336 F.2d. It is to be observed that the New Jersey court in its Minneapolis-Honeywell case, at p. 566 of 197 A.2d, stated that it was "depart(ing) from what might be regarded as the full significance of" its earlier decision and comments in Gypsum Contractors, Inc. v. American Sur. Co., supra, 37 N.J. 315, 181 A.2d 174 (1962).

A study of these cases clearly reveals, it seems to us, that they were prompted and spawned either by the expression which appeared in the majority opinion in our Robertson case, p. 800 of 305 F. 2d, that is, "we think that the clear import of the language used was to take Capehart bonds entirely out of the Miller Act", or by the non-public work approach of the Tenth Circuit in Harrison. Thus, in the North Dakota case, both opinions

were quoted extensively and the language we employed was used at p. 561 of 122 N.W.2d. The New Mexico court, at p. 628 of 385 P.2d, said at first, "Both of these cases clearly hold that a Capehart bond and suits thereon are not actions on a Miller Act bond, and that the jurisdictional provision noted above is not applicable", but then conceded that "the two circuit court opinions referred to did not directly hold that the state courts had concurrent jurisdiction in actions such as the instant one." The New Jersey court, at p. 565 of 197 A.2d, observed that, unquestionably, the two cases "cast doubt on what might appear to be the full scope of the interpretation we adopted in Gypsum", and felt that the influence of the two opinions becomes "more persuasive, and moves us to accept their conclusions as providing the solution for the present case". Judge Oliver below, at p. 417 of 224 F.Supp., indicated substantial agreement with the New Jersey Gypsum opinion but said:

> "We are, of course, in radical disagreement with the rationale and with the conflicting decision of the Supreme Court of New Mexico reported as Allsop Lumber Co. v. Continental Casualty Co., 385 P.2d 625 (1963). We note in passing that the possibility of the 'judicial chaos' to which we alluded on page 474 of 215 F.Supp. is developing at a predictably rapid rate."

As we read these three state court opinions we find agreement with the *results* reached in Robertson and in Harrison but no specific acceptance of the

Tenth Circuit's non-public work approach. We feel, as we have indicated above, that these state decisions were prompted by Robertson and Harrison and, with a natural inclination in favor of state court jurisdiction, that they regarded at least our decision as indicative of something beyond its actual holding.

In Allsop we subjected our Robertson opinion to detailed review. We gave particular attention to the conclusionary statement which Judge Oliver found so troublesome. We stated that that sentence must be read "in context and not out of it, and in the light of the issue and holding of that case", and that "Robertson stands for what it holds, namely, that the notice provisions of a Capehart bond prevail over the less stringent notice provisions in the Miller Act". We adhered to Robertson in that respect and we must still adhere to it. But we do not regard it as authority for the conclusions reached by the three state courts favoring state court jurisdiction of Capehart bond actions.

3. Our attention has now been called (as it was not in Allsop) to a letter presented at the hearings before the House Committee on Banking & Currency, 84th Cong., 2d Sess., 195–96 (1956), on H.R. 10157. That bill ultimately became P.L. 84–1020. Its § 506(d), 70 Stat. 1110, added the language in the Capehart Act calling for performance and payment bonds and referring specifically to the Miller Act.[3] The letter, dated June 4, 1956, was from the Director, Legislative Programs, Office of the Assistant Secretary of Defense.[4] On the strength of

---

3. 42 U.S.C.A. § 1594(a).
"Any such contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 270a of Title 40, and no additional bonds shall be required under such section."

4. "It is also recommended that H.R. 10157 be amended to make it clear that the provisions of the Miller Act (40

U.S.C. 270a) are not applicable to title VIII housing. It appears more appropriate to provide for use of the FHA dual obligee bond form for both performance and payment bonds. The cost of the FHA bond is substantially less than the cost of bonds required by the Miller Act for public works so that the proposed amendment will serve to decrease the cost of construction and otherwise facilitate contractual relationships. Accordingly, it is suggested that the following amendment be added to the bill:
"Section 403(a) of the Housing Amendments of 1955 is amended by

this letter it is argued that the Miller Act is expressly made inapplicable to Capehart housing and it is pointed out that the New Jersey court in its Minneapolis-Honeywell decision, supra, pp. 565–566 of 197 A.2d, relied on this letter in reaching its conclusion in that case.

We recognize that the language proposed by the letter approximated that of the 1956 amendment to 42 U.S.C. § 1594 (a). But we are not inclined to give the letter the persuasive force urged by Koppers here. First, the 1956 amendment is certainly unclear and, perhaps, may be characterized as poorly drafted. Koppers, at least on oral argument, has conceded that it cannot contend that the amendment was clear. Second, it is no more than an ambiguous administrative proposal. Third, we are not at all certain that the intent of the letter was to take Capehart bonds "entirely out of the Miller Act", to use our own Robertson language. Fourth, the letter refers to only § 1 of the Miller Act and not at all to the jurisdictional provisions of that Act in § 2(b). And, fifth, we are impressed with the statement by Senator Sparkman, Chairman of the Subcommittee on Housing, 102 Cong.Rec. 8874, 84th Cong., 2d Sess., that the 1956 amendment was one merely "to *clarify* the bonding requirements" [emphasis supplied]. We regard the 1956 letter as one of interest but as providing too indistinct and too frail a basis for us to recede from our position in Allsop. We prefer to regard its significance, if any, as restricted to its and the statute's very language, namely, a "sufficient compliance with the provisions of" § 1.

4. Koppers suggests, though perhaps only mildly, that, in any event, 40 U.S.C. § 270b(b), is nothing more than a venue statute and is not a jurisdictional one in the sense of the court's power to enter-

tain the action. This may be still another place in this Miller-Capehart area where the law is somewhat unclear.

The federal decisions are not uniform. Thus, the Fifth Circuit has indeed referred to the statute as one of venue and has permitted a Miller bond suit to be tried in a federal court other than the one of the district in which the contract was to be performed; it held that the requirement as to the district was for the benefit of defendants and could be waived. Texas Constr. Co. v. United States for Use of Caldwell Foundry & Mach. Co., 236 F.2d 138, 145 (5 Cir. 1956). Other cases implying the venue character of the statute, as contrasted with the jurisdictional, are United States for Use of Mitchell Bros. Truck Lines v. Jen-Mar Constr. Co., 223 F.Supp. 646 (D.Or.1963); United States to Use and Benefit of Bailey-Lewis-Williams v. Peter Kiewit Sons Co., 195 F. Supp. 752, 755–756 (D.D.C.1961), affirmed under the name of Indemnity Ins. Co. of North America v. United States to Use and Benefit of Bailey-Lewis-Williams, 112 U.S.App.D.C. 99, 299 F.2d 930 (1962); Northwest Lumber Sales, Inc. v. S.S. Silberblatt, Inc., 211 F.Supp. 749, 750 (E.D.Mo.1962); United States v. Zschach Constr. Co., 110 F.Supp. 551, 552 (E.D.Okl.1953), affirmed, 209 F.2d 347 (10 Cir. 1954). On the other hand, the court in United States for Use and Benefit of Fairbanks Morse & Co. v. Bero Constr. Corp., 148 F.Supp. 295, 298 (S.D.N.Y.1957) flatly spoke of the statute as one embracing "a jurisdictional requirement".

The state courts apparently have consistently refused to assume jurisdiction over Miller bond suits. See, for example, Pierce Contractors, Inc., v. Peerless Cas. Co., Fla., 81 So.2d 747 (1955); Gardner v. Roberts-Nash Constr. Corp., 104 N.Y. S.2d 657 (Sup.Ct.1951).

adding before the final sentence thereof the following: 'Any such contract shall provide for the furnishing by the Contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Commissioner and the Secretary of Defense, or their

designees, and the furnishing of such bonds shall be deemed sufficient compliance with the provisions of section 1 of the Act of August 24, 1935, and no additional bonds will be required under such section,"

■ Irrespective of the venue or jurisdictional nature of the statute as between federal district courts, we have no doubt that, as between a state court, on the one hand, and a federal court, on the other, the statute is jurisdictional in character and operation and places exclusive jurisdiction over Miller Act bond suits in the federal tribunal. United States for Use and Benefit of Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d 655, 667, and footnote 9 on p. 669 (2 Cir. 1962). Furthermore, the statute's specific reference to "the United States District Court", and its use of the mandatory words "shall" and "and not elsewhere", are significant and perhaps conclusive in and of themselves. We detect nothing to the contrary in any of the federal decisions which we have cited save, perhaps, Silberblatt. There is, of course, no question of the power of Congress to confine a Miller or a Capehart bond action to federal courts. Claflin v. Houseman, 93 U.S. 130, 137, 23 L.Ed. 833 (1876). 14 Am.Jur., Courts, § 248, pp. 442–43.

5. It might be suggested that an affirmance of the district court's dismissal order results in an injustice to a claimant. Such an argument will necessarily rest on the bond's implication as to the availability of a state forum and on a claimant's not being aware that the jurisdictional provisions of § 2(b) of the Miller Act apply to a Capehart bond. However, a question of this kind is always present when the application of such a statute is at issue. Koppers was not a party to the bonds and asserts here neither any claim of being misled by the defendants nor any theory of estoppel. It is the statute, not the purported permissive provisions of the bond used by administrative authorities, which determines and confers court jurisdiction.

■ 6. It is argued lastly that the bond statute, 28 U.S.C. § 1352, which provides that the federal district courts "shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States", was enacted in 1948, a date subsequent to the passage of the Miller Act in 1935 and prior to the passage of the Capehart Act in 1955, and that the 1948 Act therefore operated to divest the federal courts of any exclusive jurisdiction which § 2(b) of the Miller Act might have provided. The argument is not persuasive. The purpose of § 1352 was to give federal courts jurisdiction of bond actions where, absent the necessary diversity and minimum amount in controversy, it otherwise did not exist. I Moore, Federal Practice, Par. 0.60 [8.–3], p. 626 (2d ed. 1961). It was not to provide state court jurisdiction over bond actions otherwise restricted to federal tribunals. Minneapolis-Honeywell Regulator Co. v. Terminal Constr. Corp., supra, p. 563 of 197 A.2d. See Revisor's note to 28 U.S.C.A. § 1352.

■ We therefore adhere to our holding in Allsop. That case, this one, the result we reached in Robertson, and our companion Missouri-Illinois decision, 337 F.2d 507, establish as the present law of this Circuit with respect to Capehart payment bond actions the following: The proper federal court has jurisdiction under Title 28 U.S.C. § 1352 over an action on a Capehart bond. Section 2(b) of the Miller Act, 40 U.S.C. § 270b(b), has application to a Capehart bond action and vests jurisdiction over that action exclusively in the federal court. Out-of-state service is effective. The limitation period set forth in § 2(b) of the Miller Act is applicable despite the presence of a specified longer period in the bond itself. But the dual notice requirement of a Capehart bond, being more stringent than the notice provisions of the Miller Act, is valid and effective.

Affirmed.