Tropicair Manufacturing Corporation, demandante y recurrente, *v.* The Coite Somers Co., Inc. y The Continental Casualty Co., demandadas y recurridas.

Número: R-67-316     Resuelto: 3 de junio de 1968

*Miranda, Cardenas & Gallardo* y *A. Arana Torrós,* abogados de los recurrentes; *Ramírez, Segal & Latimer,* abogados de la recurrida The Continental Casualty Company.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

The Coite Somers Company y la Continental Casualty Co., como principal y fiadora respectivamente, prestaron una fianza para garantizar el pago de los materiales que se utilizaran y la mano de obra que se empleara en la ejecución de un contrato para la construcción de viviendas para miembros de las fuerzas armadas en el Fuerte Buchanan. Dicha

fianza se prestó según requerido por la Ley Capehart, 42 U.S.C. § 1594, L. 1955 c. 783, 69 Stat. 651, que en su parte pertinente dispone que:

"Se requerirá en dichos contratos [de construcción de viviendas en tierras pertenecientes a o arrendadas por Estados Unidos para proveer residencias adecuadas al personal militar] la prestación por el contratista de fianzas para garantizar la ejecución del contrato y el pago [de materiales y mano de obra] por fiadores aceptables para el Secretario de Defensa o la persona a quien éste designe, y la prestación de dichas fianzas se considerará como un cumplimiento suficiente con las disposiciones de la sección 270a del Título 40, y no se requerirán fianzas adicionales bajo dicha sección."

■ La Ley Miller, 40 U.S.C. § 270(a) *et seq.*, a que se refiere la disposición transcrita, es un estatuto de carácter general que requiere la prestación de fianzas en todo contrato para la construcción, reparación o alteración de un edificio u obra pública federal.[1] Byrne y Costello, *The Evolution of Coverage under the Miller Act*, 28 Fordham L. Rev. 287 (1959); Stickells, *Bonds of Contractors on Federal Public Works—The Miller Act*, 36 B.U.L. Rev. 499 (1956). Su Sec. 270b(b) expresamente provee que cualquier acción iniciada bajo la misma se promoverá a nombre de Estados Unidos para beneficio del reclamante "en la Corte de Distrito de Estados Unidos de cualquier distrito en que se lleve a cabo y ejecute el contrato *y en ningún otro tribunal,* irrespectivamente de la cuantía reclamada . . . ." (Énfasis nuestro.)

En el presente recurso se plantea la determinación del foro procedente para entender en la reclamación de un mate-

---

[1] Legislación similar se adoptó en Puerto Rico, Ley Núm. 388 de 9 de mayo de 1951, 22 L.P.R.A. secs. 47–58, *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207, 212 (1965), y en cierto modo, la Ley Núm. 111 de 22 de junio de 1961, 29 L.P.R.A. secs. 195–206. Véanse, en cuanto a fianzas en obras públicas, *Ferrer* v. *Alliance Company of P.R., Inc.*, 93 D.P.R. 1 (1966); *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739 (1964); *Cristy & Sánchez* v. *E.L.A.*, 84 D.P.R. 234 (1961).

rialista contra el contratista de un proyecto Capehart. Una corporación local, Tropicair Manufacturing Corporation, inició acción contra The Coite Somers Company por materiales suplidos para el contrato identificado como F.H.A. 056-81007 para la construcción de unidades residenciales en el Fuerte Buchanan. La parte demandada solicitó la desestimación mediante alegación al efecto de que la jurisdicción correspondía exclusivamente a la Corte de Distrito de Estados Unidos para Puerto Rico. Así lo estimó el tribunal de instancia. Acordamos revisar.

La interacción de las Leyes Miller y Capehart en relación con fianzas prestadas en proyectos de viviendas para militares ha sido objeto de consideración por tribunales federales habiéndose producido un conflicto irreconciliable entre distintas cortes de apelación en cuanto a su aplicación.

En *United States* v. *Harrison and Grimshaw Construction Co.*, 305 F.2d 363 (10th Cir. 1962), se sostuvo que la Ley Miller era inaplicable a las fianzas Capehart aduciéndose que: (a) la construcción de viviendas bajo la Ley Capehart no es "un edificio o una obra pública de Estados Unidos" ya que se trata de un proyecto de una empresa privada sufragado con fondos particulares y que envuelve un riesgo privado, y la eventualidad de que a la terminación del contrato el título pasará a Estados Unidos no lo convierte en un proyecto público; (b) originalmente la Ley Capehart no contenía disposición alguna sobre la prestación de fianza, y es mediante la enmienda de 1956 transcrita en el párrafo primero de esta opinión que se requiere la misma, lo que constituye un reconocimiento congresional de las características peculiares de los proyectos Capehart; (c) la enmienda meramente expresa que la prestación de las fianzas se considera como un cumplimiento sustancial de dicha ley, "[n]o dice que las disposiciones de la Ley Miller se apliquen a estas fianzas" (a la pág. 367); (d) la interpretación administrativa contemporánea con la aprobación de la enmienda

de 1956, contenida en la reglamentación que aparece en 24 C.F.R. § 292a.27, confirma—por inclusión del deudor hipotecante y del acreedor hipotecario como beneficiarios de la fianza—la naturaleza privada del proyecto; (e) contrario a la Ley Miller, que intenta proteger mediante la fianza a los obreros y materialistas en sustitución del gravamen estatutario aplicable en obras privadas, la Ley Capehart reconoce la posibilidad de recurrir a este gravamen amparándose en la ley estatal que lo autoriza. En tal virtud se le dio efectividad a las cláusulas contractuales de notificación previa a la iniciación de acción judicial sobre las disposiciones de la Ley Miller al respecto. Notas en 49 Va. L. Rev. 174 (1963) y 111 U. Pa. L. Rev. 1014 (1963).

*Continental Casualty Company* v. *United States*, 305 F.2d 794 (8th Cir. 1962), igualmente sostiene que los proyectos Capehart no constituyen programas de construcción federales en el sentido convencional, según evidenciado por el financiamiento privado de las viviendas y la administración conjunta de los mismos por el Departamento de Defensa y la Administración Federal de Hogares, sino más bien *sui generis*. Se hace eco de la manifestación en *Harrison* al efecto de que si la intención del Congreso hubiese sido que se aplicaran las provisiones de procedimiento de la Ley Miller, así lo hubiese dispuesto expresamente. Llama igualmente la atención a la interpretación administrativa y a la intervención de las agencias encargadas de poner en vigor la política pública, especialmente en la redacción de la forma de la fianza.(²) Véanse, además, *Northwest Lumber Sales Inc.* v.

---

(²) El modelo para fianzas Capehart preparado por la Administración Federal de Hogares, forma Núm. 2452 C.P., provee que:

"4. No se iniciará acción por ningún reclamante bajo la presente fianza,

    (a) .    .    .    .    .    .    .    .

    (b) .    .    .    .    .    .    .    .

    (c) En ninguna corte estatal de jurisdicción competente que no sea la del condado o subdivisión política del Estado en que el

*S.S. Silberblatt Inc.*, 211 ·F.Supp. 749 (E.D. Mo. 1962); *United States* v. *Travelers Indemnity Co.*, 215 F.Supp. 455 (N.D. Mo. 1963).

Continental Casualty Co. v. *Allsop Lumber Co.*, 336 F.2d 445 (8th. Cir. 1964), *Koppers Company* v. *Continental. Casualty Company*, 337 F.2d 499 (8th Cir. 1964), y *Autrey* v. *Williams and Dunlap*, 343 F.2d 730 (5th Cir. 1965), asumen una posición contraria y resuelven que las fianzas en los proyectos Capehart están cubiertas por la Ley Miller. Al efecto se sostiene que los proyectos Capehart son "obras públicas"; se invocan además el historial y el propósito legislativo que animó la aprobación de ambos estatutos, la existencia de diferencias entre las leyes de los distintos estados y la conveniencia de mantener una interpretación uniforme en vista de las características comunes de estas construcciones y la necesidad de evitar múltiples litigios.

■ Estamos conscientes de que el problema. que confrontamos es. uno de interpretación de ley federal. En ausencia de una determinación final por el Tribunal Supremo de Estados Unidos, (³) y sin que necesariamente signifique una adhesión a los razonamientos expuestos por las cortes federales intermedias, creemos que la más juiciosa política judicial para Puerto Rico—el carácter excepcional. de la jurisdicción federal—requiere que no se le impida el acceso a nuestros tribunales a los obreros y materialistas locales que son beneficiarios de las fianzas prestadas en proyectos Capehart. De un lado no se priva de recurrir al foro federal si así se prefiere, pues todo cuanto señalamos es la concurrencia

proyecto, o parte del mismo, esté localizado, o en la Corte de Distrito de Estados Unidos del distrito en que el proyecto, o parte del mismo, esté localizado, y en ninguna otra corte."

(³) A pesar de la existencia de este conflicto de interpretación la Corte Suprema de Estados Unidos no ha accedido a revisar la cuestión para establecer la norma federal. *Miles Lumber Co.* v. *Harrison & Grimshaw Construction Co.*, 371 U.S. 920 (1962); *Robertson Lumber Co.* v. *Continental Casualty Co.*, 371 U.S. 922 (1962).

150

de jurisdicción,(⁴) y por otro lado, no nos apartamos de la trayectoria que unánimemente han seguido las cortes estatales al considerar situaciones similares. *Allsop Lumber Co. v. Continental Casualty Co.,* 385 P.2d 625 (N.M. 1963); *Ireland's Lumber Yard v. Progressive Contractors,* 122 N.W. 2d 554 (N.D. 1963); *Minneapolis-Honeywell R. Co. v. Terminal Const. Corp.,* 197 A.2d 557 (N.J. 1964); *B. C. Richter Contracting Co. v. Continental Casualty Co.,* 41 Cal. Rptr. 98 (1964).

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 12 de septiembre de 1967, y se devolverá el caso para ulteriores procedimientos.*

---

(⁴) No puede pasarse por alto el precepto contenido en 28 U.S.C. § 1352 que confiere jurisdicción concurrente a las cortes estatales en cualquier acción en relación con fianzas prestadas "bajo cualquier ley de Estados Unidos", escolio 3 en *National State Bank of Newark v. Terminal Const. Corp.,* 217 F.Supp. 341 (N.J. 1963), conf. en 328 F.2d 315 (3d Cir. 1964), cuyo propósito fue eliminar los requisitos de cuantía y diversidad de ciudadanía para recurrir a las cortes federales en tales casos. Véanse, *Koppers Company v. Continental Casualty Co.,* 337 F.2d 499 (8th Cir. 1964); *Continental Casualty Co. v. Allsop Lumber Co.,* 336 F.2d 445 (8th Cir. 1964); *B. C. Richter Contracting Co. v. Continental Casualty Co.,* 230 C.A.2d 491 (1964).